UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONIA EL-HUSSAIN, TAMERA | § | |
| HUTCHERSON, and NIDAA LAFI, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-0737-B |
| | § | |
| DALLAS COUNTY, JANE DOE, JOHN | § | |
| DOE 1, and JOHN DOE 2, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Dallas County's Rule 12(b)(6) Motion to Dismiss. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the County's Motion.

I.

BACKGROUND

This is a civil rights case. On January 8, 2024, Plaintiffs Donia El-Hussain, Tamera Hutcherson, and Nidaa Lafi were protesting the Israel-Palestine conflict when Dallas Police arrested them. Doc. 10, Am. Compl., ¶¶ 20–21. Soon after they arrived, El-Hussain and Lafi "were taken to a holding cell, while Hutcherson remained in the common area." *Id.* ¶ 22. Hutcherson, El-Hussain, and Lafi each wear hijabs—religious head coverings—as part of their sincerely held religious beliefs. *Id.* ¶ 15. While still in the common area, a male officer, John Doe 1, ordered Hutcherson to remove her hijab for a mugshot. *Id.* ¶ 25. Though Hutcherson explained that removing it would violate her

sincere religious beliefs, Doe again ordered her to remove her head covering. *Id.* Hutcherson then removed her hijab, and another male officer took her mugshot. *Id.* ¶¶ 25–26.

El-Hussain and Lafi were later taken to the common area for their mugshots, where a female officer, Jane Doe, ordered them to remove their hijabs. *Id.* ¶ 27. When they refused and explained their religious objections, Jane Doe responded, "[T]his is part of the process. This can be either easy or difficult." *Id.* ¶ 28. The purpose, she explained, was to "show their hair color." *Id.* Doe elaborated, "Everyone has to do it. We make everyone take off their wigs, weaves, and hats." *Id.* ¶ 29. El-Hussain and Lafi continued to object until Jane Doe explained they would be detained "indefinitely until they complied." *Id.* ¶ 30. "[F]eeling coerced," they removed their hijabs. *Id.* ¶ 32. El-Hussain and Lafi recall being without their hijabs for about five minutes. *Id.* ¶ 33.

Plaintiffs allege thousands of people have access to their mugshots. *Id.* ¶ 34. Their photos were uploaded to an online database, Adult Information System ("AIS"), where they remain. *Id.* ¶¶ 34, 73. And they allege that AIS is integrated into other law enforcement databases. *Id.* ¶ 35. Plaintiffs allege the mugshots also appeared on NBC News and were made available to the Texas Board of Law Examiners. *Id.* ¶ 36. "Plaintiffs continue to feel dehumanized" and "violated." *Id.* ¶ 37.

To gather facts to support these claims, Plaintiffs allege they submitted a public information request to the Dallas County Sheriff's Office. *Id.* ¶ 38. They requested the County's "policies and customs related to the mandatory removal or [sic] religious head or hair coverings, procedures distinguishing between religious and non-religious headwear, and policies and procedures pertaining to religious accommodations." *Id.* The Sheriff's Office responded that these "materials were exempt from disclosure." *Id.* ¶ 40.

Plaintiffs assert five claims against Dallas County and three unnamed correctional officers for violating their religious rights by ordering them to remove their hijabs after their arrest. *See* Doc. 10, Am. Compl., ¶¶ 25–32, 45–75. The County[1] moved to dismiss three of those claims. First, Plaintiffs sue under 42 U.S.C. § 1983, alleging the County violated their First Amendment religious freedoms. *Id.* ¶¶ 54–62. Second, they allege the County violated their freedom of worship under the Texas Constitution. *Id.* ¶¶ 63–68. And third, they seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and Federal Rule of Civil Procedure 57. *Id.* ¶¶ 69–75. The Court considers the Motion to Dismiss each of these claims below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals

---

[1] Since the names of the officers involved "remain unknown," Doc. 10, Am. Compl., ¶ 18, and Dallas County is the only named defendant and the only movant, this Order only addresses Dallas County.

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations omitted).

## III.

## ANALYSIS

After considering each of the County's challenges to Plaintiffs' claims, the Court **GRANTS** the Motion to Dismiss Plaintiffs' § 1983 and Texas constitutional claims and **DISMISSES** them **WITHOUT PREJUDICE** and **DENIES** the Motion to Dismiss Plaintiffs' declaratory judgment claim.

A.    *The Court Grants Dallas County's Motion to Dismiss Plaintiffs' § 1983 Claim.*

First, the Court grants the County's Motion with respect to Plaintiffs' § 1983 claim and dismisses it without prejudice. Section 1983 holds liable "[e]very person who, under color of [state law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] . . . ." 42 U.S.C. § 1983. In *Monell v. New York City Dep't of Soc. Servs.*, the Supreme Court held that "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978) (emphasis in original); *Littell v. Hous.*

*Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) ("[M]unicipal entities like the school district qualify as 'persons.'" (citation omitted)). But at the same time, the Court "recognized a limitation on this liability and concluded that a municipality cannot be made liable by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Instead, municipalities incur liability under § 1983 "when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

Thus, to prevail against a municipality[2] under § 1983, "a plaintiff must show that [1] an official policy [2] promulgated by a municipal policymaker [3] was the moving force behind the violation of a constitutional right." *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted). Plaintiffs present two theories to support their § 1983 claim against the County: an official policy theory and a failure-to-train theory.

     1.    <u>Official Policy or Custom</u>

        i.    *Existence of an Official Policy or Custom*

First, Plaintiffs fail to allege the existence of an official policy or custom. An official policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*,

---

[2] Though Plaintiffs sued a county, § 1983 caselaw applies in the same manner to municipalities and counties, as the Parties note in their briefs. *See* Doc. 12, Mot., 11 n.8; Doc. 13, Obj., 11 n.1. *See also Henderson*, 51 F.4th at 130–31 (citing § 1983 cases concerning municipalities to a case against a county).

563 U.S. 51, 61 (2011). For a plaintiff to successfully plead such a policy, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)) (internal quotations omitted). "[A] plaintiff must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622. A plaintiff can allege an unwritten policy "by pointing to similar incidents that are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Martinez v. Nueces Cnty.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson*, 588 F.3d at 850–51). And the specific facts they allege "must be similar to the case at hand: '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Johnson v. Harris Cnty.*, 83 F.4th 941, 946–47 (5th Cir. 2023) (quoting *Martinez*, 71 F.4th at 389).

In *Peña*, the Fifth Circuit affirmed a § 1983 claim's dismissal because the plaintiff pled only two facts, and each failed to plausibly allege an official policy. 879 F.3d at 622. The first fact failed because it was "causally irrelevant" to the plaintiff's harm. *Id.* The second fact was "the single incident in which [the plaintiff] was involved." *Id.* Since this single incident was "the only specific fact in the complaint," the plaintiff's § 1983 claim did not survive a county's motion to dismiss. *Id.* at 622, 625.

But in *Bond v. Nueces County*, the Fifth Circuit found a plaintiff's § 1983 claim of faulty jail medical care should have survived a motion to dismiss because she alleged twenty-three prior, similar incidents of inadequate care. No. 20-40050, 2022 WL 4595000, at *5 (5th Cir. Sept. 30, 2022). Though the plaintiff could not point to a specific policy, she alleged enough facts "to create a

reasonable inference that a policy exist[ed], or that there exist[ed] a failure to have any pertinent policy." *Id.* at *7.

Here, Plaintiffs fail to adequately plead that the County "acted pursuant to a policy or custom which denies inmates Free Exercise of Religion" when the officers ordered them to remove their hijabs. Doc. 10, Am. Compl., ¶ 59. They argue this "was a widespread policy and not a one-off incident" because John Doe 1 first ordered Hutcherson to remove her hijab, and Jane Doe later and separately instructed El-Hussain and Lafi to remove their hijabs. *Id.* ¶¶ 25, 27, 43.

The Court is not persuaded. Like the plaintiff's facts in *Peña*, the only specific fact alleged "describe[s] the incident that gave rise to [their] injury." *Peña*, 879 F.3d at 622. And just as the Fifth Circuit held in *Peña*, merely describing Plaintiffs' incidents that gave rise to this lawsuit does not "plausibly plead a practice so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick*, 563 U.S. at 61) (internal quotations omitted); *see also Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017) (collecting cases where courts found there was not a "policy based on pattern" when the plaintiffs alleged as many as two to twenty-seven complaints of similar violations).

The officers' specific statements are also insufficient to infer an official policy. Jane Doe allegedly said that requiring Plaintiffs to remove their head coverings was "part of the process" and the officers "make everyone take off their wigs, weaves, and hats." Doc. 10, Am. Compl., ¶ 28. Plaintiffs do not allege a written policy, but they could have alleged Doe's unwritten statement indicated a policy by pointing to sufficiently numerous incidents that were like theirs. *See Martinez*, 71 F.4th at 389. But unlike the prior incidents alleged in *Bond* where other inmates suffered inadequate medical care, Jane Doe's statements do not suggest prior, *similar* incidents. *See* 2022 WL 4595000, at *5. This is because Jane Doe never referenced incidents requiring arrestees to remove

their *religious* coverings. Prior commands requiring arrestees to remove *nonreligious* head coverings do not constitute "prior indications" that "point to the specific violation in question." *Johnson*, 83 F.4th at 946–47.

      ii.    *Promulgated by a Municipal Policymaker*

Even if they had adequately pleaded an official policy existed, Plaintiffs fail to allege that a municipal policymaker promulgated it. Plaintiffs correctly note that they "need not allege the identity of chief policymaker(s) at the pleading stage." Doc. 10, Am. Compl., ¶ 44; *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). Instead, "the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Id.* But "[a] city cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Peña*, 879 F.3d at 623 (quoting *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

Other § 1983 cases are instructive as to when knowledge is "attributable to a city policymaker." *Peña*, 879 F.3d at 623 (internal quotations omitted). In *Groden*, a plaintiff adequately pleaded that a municipal policymaker promulgated a policy of authorizing illegal arrests targeting "annoying speech." 826 F.3d at 286.  There, the plaintiff alleged that a city's spokesman "publicly announced a new policy of cracking down on vendors" downtown, and "gave media interviews describing the new policy." *Groden*, 826 F.3d at 286. These claims sufficiently alleged that the policy was attributable to the city's policymaker. *Id.* But in *Peña*, the plaintiff failed to allege that a policymaker promulgated "a policy of tasing juvenile non-suspects and moving targets" because her "complaint invite[d] no more than speculation that any particular policymaker . . . knew about the alleged custom." 879 F.3d at 623.

Plaintiffs here also "invite[] no more than speculation that any particular policymaker" knew of the alleged violation. *Id.* "[I]n Texas, the county sheriff is the county's final policymaker in the area of law enforcement." *Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 136 (5th Cir. 1990). To support a policymaker's knowledge, Plaintiffs allege "Dallas County, vis-à-vis, Dallas County Sheriff's Office and Sheriff Marian Brown's policies, practices, and customs . . . directly violate the First Amendment as well as other federal and state law." Doc. 10, Am. Compl., ¶ 15. Plaintiffs also allege that Jane Doe said that Plaintiffs removing their head covering was "part of the process" to "show their hair color," and that "[a]fter stating it was the Dallas County Sheriff's Office standard process and procedure to require removal of any head coverings, Jane Doe expounded, 'Everyone has to do it.'" *Id.* ¶¶ 28–29. Plaintiffs equate Doe's first statement that it was "part of the process," to Jane Doe "stating [this requirement] was the Dallas County Sheriff's Office standard process." *Id.* But they plead no facts to allow the Court to draw a reasonable inference that this process was promulgated by the Sheriff or any particular policymaker. Unlike in *Groden*, they point to no public announcements or other indicators—aside from a vague statement by one officer noting a "process" exists—to support that this process was attributable to the County's policymaker. 826 F.3d at 286. They point to no facts that support the Sheriff even knew of the process, let alone promulgated it. For this Court to infer that this process is attributable to any final policymaker, Plaintiffs must allege more than one officer's statement about it.

2.   Failure to Train

Plaintiffs also do not adequately plead a failure-to-train theory for § 1983 liability. A plaintiff who fails to allege an official policy or custom existed can still assert a § 1983 claim using a failure-to-train theory. "The failure to train can amount to a policy if there is deliberate indifference to an

obvious need for training where citizens are likely to lose their constitutional rights . . . ." *Peterson*, 588 F.3d at 849. "[I]n order to state a claim for *Monell* liability for failure to train or supervise, plaintiffs must allege that (1) the municipality's training or supervisory policies or practices were inadequate, (2) the municipality was deliberately indifferent in adopting those polices or practices, and (3) the policies or practices caused plaintiffs' constitutional injuries." *Washington v. Smith*, 639 F. Supp. 3d 625, 652 (E.D. La. 2022); *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021). A plaintiff must plausibly plead each element to allege a failure-to-train theory. *See Rusanowsky v. City of Dallas*, No. 3:22-CV-01132-K, 2023 WL 2728722, at *5 (N.D. Tex. Mar. 30, 2023) (Kinkeade, J.) (ending the inquiry when a plaintiff failed to plausibly plead the second element of a failure-to-train claim). Plaintiffs fail to plead each of these elements.

        *i.*      *Inadequate training or supervisory policies*

To allege a training or supervisory policy or practice was inadequate, a plaintiff "must allege with specificity how a particular . . .  program is defective." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)); *see also Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 563 (N.D. Tex. 2016) (Boyle, J.).

Plaintiffs fail to specifically allege how any Dallas County program is defective. They base their failure-to-train theory on their contention that Dallas County's Sheriff "failed to adopt clear policies and failed to properly train its deputies as to the photographing and booking of those with religious headwear," and that this failure caused Plaintiffs' constitutional violation. Doc. 10, Am. Compl., ¶¶ 60–61. They do not allege any facts regarding the County's training or supervisory policies that permit the Court to plausibly conclude any training was inadequate. Instead, Plaintiffs plead that the County's training was merely absent or not "proper[]." Doc. 10, Am. Compl., ¶ 60.

But absent any facts to support their allegation of an absence of training or "fail[ure] to properly train," *id.*, the allegation is merely conclusory and insufficient to constitute a plausible pleading required at this stage. *See Peña*, 879 F.3d at 622 (quoting *Spiller*, 130 F.3d at 167) (internal quotations omitted) ("[A] complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.").

      ii.     *Deliberate indifference*

There are two ways to plead deliberate inference: (1) by alleging a pattern of constitutional violations, or (2) by alleging a single incident in which "the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged training inadequacy." *Littell*, 894 F.3d at 624. A plaintiff can allege a pattern of constitutional violations by alleging that constitutional rights violations happen "so often" that it creates an inference that "the need for further training must have been plainly obvious to the . . . policymakers." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In the absence of a pattern of constitutional violations, a plaintiff may allege "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997) (citations omitted). This single-incident exception applies where "the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged training inadequacy." *Littell*, 894 F.3d at 624 (quotations and citation omitted). "For a violation to be highly predictable, the municipality must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Henderson*, 51 F.4th at 131 (quoting *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021)). The single-incident

exception is "extremely narrow," and "is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Henderson*, 51 F.4th at 131 (emphasis in original) (internal quotations omitted).

Plaintiffs' contentions also fail to plead deliberate indifference. Plaintiffs do not allege a pattern of constitutional violations. Instead, they plead that they were "commanded to remove their religious headwear to be photographed by potentially different correctional officers." Doc. 10, Am. Compl., ¶ 43. But two alleged instances that both occurred on the same night, and only affected the parties to this lawsuit, do not create a plausible inference of constitutional violations that occurred "so often" that "the need for further training must have been plainly obvious to the policymakers." *Littell*, 894 F.3d at 624 (citations omitted). Plaintiffs also argue that the officers "made it abundantly clear . . . that the forced removal of Plaintiffs' religiously mandated hair-coverings was . . . a specifically delineated and widely understood policy." Doc. 10, Am. Compl., ¶ 41. But their only facts supporting this are the two groups and Jane Doe's statements discussed above. *Id.* ¶¶ 28–29. They do not allege that the correctional officers themselves, let alone policymakers, engaged in or knew of repeated constitutional violations.

And Plaintiffs fail to plausibly plead that the single-incident exception applies. The Plaintiffs "do not allege that the [C]ounty provided no training," *Hutcheson*, 994 F.3d at 483, but rather that the Sheriff "failed to adopt clear policies and failed to properly train its deputies." Doc. 10, Am. Compl., ¶ 60. Without pleading that there was "*no training*, . . . they cannot show that the county was deliberately indifferent." *Hutcheson*, 994 F.3d at 483. And in any event, merely stating that the Sheriff did not "adopt clear policies" or "properly train its deputies," Doc. 10, Am. Compl., ¶ 60, are conclusory allegations that lack specific facts, which are insufficient to survive a motion to

dismiss. *Peña*, 879 F.3d at 622 (quoting *Spiller*, 130 F.3d at 167) (internal quotations omitted). And alleging that Dallas County Sheriff's Office failed to produce policy-related documents in response to Plaintiffs' information request does not plausibly plead a failure to train. *See* Doc. 10, Am. Compl., ¶¶ 38–40; *Henderson*, 51 F.4th at 131 (finding a plaintiff failed to plead that officers had no training regarding constitutional taser use when "[h]er only support for that contention" was that the County "failed to produce any written policies or procedures governing the conduct of deputy constables in performing law enforcement" in response to her public information requests).

Plaintiffs also fail to establish that the alleged violation was highly predictable because they do not plausibly plead that the alleged failure to train regarded "a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Henderson*, 51 F.4th at 131. Instead, they plead that "forc[ing] Plaintiffs who wear religious head coverings to remove" them "alienates faith communities throughout Dallas County," without more. Doc. 10, Am. Compl., ¶ 15.[3] Without alleging facts to support Plaintiffs' conclusion that this caused alienation, this claim, too, is "conclusory" and lacks the "specific facts" required at the pleadings stage. *Peña*, 879 F.3d at 622 (quoting *Spiller*, 130 F.3d at 167) (internal quotations omitted).

Since Plaintiffs fail to plausibly allege their § 1983 claim, the Court **GRANTS** the County's Motion with respect to this claim and **DISMISSES** it **WITHOUT PREJUDICE**.

---

[3] In Plaintiffs' Response to the Motion to Dismiss (Doc. 14), they explain, "[r]eligiously worn head coverings are commonplace among various religious populations, . . . and Dallas County has a particularly large and connected Muslim community." Doc. 14, Resp., 13. But courts generally consider only the *pleadings* when ruling on a motion to dismiss. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (noting that "[i]f a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)").

B.     *The Court Grants the County's Motion to Dismiss Plaintiffs' Claim Under the Texas Constitution.*

Next, the Court grants the County's Motion to Dismiss the Plaintiffs' Texas constitutional claim and dismisses it without prejudice. To plead a claim under the Texas Constitution, a plaintiff must plausibly allege that her rights under the Texas Constitution were violated[4] and that she is entitled to equitable relief. *See Reynolds v. City of Commerce*, 853 F. App'x 978, 980 (5th Cir. 2021) (per curiam) (unpublished) (affirming the lower court's granting of a motion to dismiss a Texas constitutional claim because the plaintiff sought "only money damages," and suits under the Texas Constitution "are limited to equitable relief").

Plaintiffs fail to plausibly allege they are entitled to equitable relief. Plaintiffs allege that the County violated their freedom of worship under the Texas Constitution by "interfere[ing] with their right to wear their head covering as their religion mandates." Doc. 10, Am. Compl., ¶ 65; *see* TEX. CONST. art. I, § 6. They allege they "sustained damages" as a result. Doc. 10, Am. Compl., ¶ 66. The County argues Plaintiffs fail to allege a Texas constitutional claim because Plaintiffs allege "they have sustained damages," and "the Texas Constitution does not provide a private cause of action to recover monetary damages for a violation of . . . the Texas Constitution." Doc. 12, Mot., 15. The Court agrees. *See Reynolds*, 853 F. App'x at 980. Though Plaintiffs seek equitable relief in their Prayer for Relief, they fail to plausibly allege they are entitled to such relief under the Texas Constitution. *See* Doc. 10, Am. Compl., ¶¶ 63–66. Plaintiffs thus fail to plead one of two requirements for a colorable Texas constitutional claim. Therefore, the Court **GRANTS** the County's Motion to Dismiss Plaintiffs' claim under the Texas Constitution and **DISMISSES** it **WITHOUT PREJUDICE**.

---

[4] Dallas County does not dispute that Plaintiffs plausibly pled that their rights under the Texas Constitution were violated. *See* Doc. 12, Mot., 14–15.

C.    *The Court Denies the County's Motion to Dismiss Plaintiffs' Declaratory Judgment Claim.*

Finally, the Court denies the County's Motion to Dismiss Plaintiffs' claim for declaratory judgment. "A district court considering a declaratory judgment action must engage in a three-step inquiry." *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 162 (5th Cir. 2015) (internal quotations omitted). It must determine: (1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant the declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Id.* (internal quotations omitted).

1.    Justiciability

First, Plaintiffs plead a justiciable declaratory judgment action. To plead a justiciable declaratory judgment action, plaintiffs must allege an "actual controversy exists between the parties." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The "actual controversy" requirement is the same as the requirement that a plaintiff plead a "case or controversy" to establish standing under Article III of the Constitution. *See id.* at 895. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). But declaratory relief for past wrongs is also possible, if a plaintiff "demonstrate[s] either continuing harm or a real and immediate threat of repeated injury in the future." *Id.*

Plaintiffs adequately plead justiciability because they allege they are suffering a continuing harm. *See Waller*, 922 F.3d at 603 (quoting *Bauer*, 341 F.3d at 358). Specifically, they allege they "are entitled to a declaratory judgment that Defendants infringed upon and substantially burdened their

religious free exercise and *continue[] to* substantially burden their religious free exercise in violation of federal and state law and the United States Constitution." Doc. 10, Am. Compl., ¶ 74 (emphasis added). Additionally, they claim their "photographs were stored in the online database, Adult Information System ("AIS")," and "can be accessed by thousands of users." *Id.* ¶ 34. They further allege "[t]he AIS photographs have not been removed or redacted in any way." *Id.* ¶ 73.

The County argues Plaintiffs allege only past harm, and therefore Plaintiffs' declaratory judgment claim must be dismissed. *See* Doc. 12, Mot., 17. But the County focuses only on Plaintiffs' failure to allege that they are likely to suffer future harm by being arrested in the future, comparing Plaintiffs to the plaintiff in *Grizzle v. Robles*. *Id.*; No. 5:22-CV-132-BQ, 2023 WL 7137067, at *3 (N.D. Tex. Apr. 28, 2023) (Bryant, M.J.), *report and recommendation adopted*, 2023 WL 7135651, at *1 (N.D. Tex. Oct. 30, 2023) (Cummings, J.). While in *Grizzle*, the court found the plaintiff "only [sought] retrospective declaratory relief," here, the Plaintiffs seek prospective relief, praying that the Court "[r]equire Defendants to remove, delete, and permanently destroy" the photographs that they allege violated their religious freedom. 2023 WL 7137067, at *3; Doc. 10, Am. Compl., Prayer, ¶ 3. And the County does not address Plaintiffs' claim that they suffer continuing harm because their photographs remain on AIS. Doc. 10, Am. Compl., ¶ 73.

Therefore, even though Plaintiffs seek "relief for past wrongs," their declaratory relief action is justiciable because they also allege "continuing harm." *See Waller*, 922 F.3d at 603 (noting "declaratory relief for past wrongs" is possible if a plaintiff in part shows "continuing harm") (alterations and quotations omitted).

-16-

2.    Authority

Second, Plaintiffs plausibly allege the Court has authority to grant the requested declaratory

relief. If a court determines the case is justiciable, it must determine "whether the court has the

authority to grant the declaratory relief." *Ironshore*, 624 F. App'x at 162. The Fifth Circuit has found

a district court had authority when it had subject matter jurisdiction over the case "and the Anti-

Injunction Act did not apply." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir.

2003).

Here, too, the Court finds it has the authority to grant declaratory relief. The Court has

subject-matter jurisdiction, and the Anti-Injunction Act does not apply. Plaintiffs assert federal

claims, so the Court has federal question jurisdiction. *See* 28 U.S.C. § 1331. And since Plaintiffs'

claims all arise out of the same facts, it has supplemental jurisdiction over Plaintiffs' state-law claims.

*Id.* at § 1367. Furthermore, as far as the Court is aware, there is "no pending state court action

between" Plaintiffs and the County. *See Sherwin-Williams*, 343 F.3d at 387–88 (finding the district

court "properly concluded" that "the Anti–Injunction Act did not apply because there was no

pending state court action between Sherwin-Williams and any of the declaratory judgment

defendants"). Therefore, the Court has authority to grant declaratory relief.

3.    Discretion

Third, the Court finds it proper to exercise discretion over Plaintiffs' declaratory judgment

claim. A district court must decide "whether to exercise its discretion to decide or dismiss" a

declaratory judgment action." *Ironshore*, 624 F. App'x at 162. District courts have "broad discretion

to decide or dismiss" such an action. *Orix*, 212 F.3d at 895. In the Fifth Circuit, district courts use

a list of seven "nonexclusive factors . . . to guide [their] exercise of discretion to accept or decline

jurisdiction over a declaratory judgment suit." *Ironshore*, 624 F. App'x at 164 (quoting *Sherwin-Williams*, 343 F.3d at 390); *see id.* (noting the Fifth Circuit "has often held a district court abuses its discretion by failing to address [these] factors" from *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)). To carefully weigh whether to exercise its discretion, district courts consider:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated,
> 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant,
> 3) whether the plaintiff engaged in forum shopping in bringing the suit,
> 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist,
> 5) whether the federal court is a convenient forum for the parties and witnesses, . . .
> 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, and . . .
> [7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Ironshore*, 624 F. App'x at 164 (quoting *Trejo*, 39 F.3d at 590–91) (alterations and omissions in original).

Each *Trejo* factor supports this Court exercising jurisdiction over Plaintiffs' claim for declaratory relief. First, the Court is unaware of any related pending state court action. Second, there is no indication Plaintiffs filed suit in anticipation of a lawsuit by the County; Plaintiffs bring federal claims in addition to their claim for declaratory relief, so there is no indication that Plaintiffs are using their declaratory judgment claim to unfairly access a federal forum. *See* Doc. 10, Am. Compl., ¶¶ 55–57. Third, forum shopping is not at issue, because this federal question claim. Fourth, possible inequities do not counsel against the Court's jurisdiction because there is no pending state court litigation over which this action could gain precedence. Fifth, the current forum is likely convenient for the parties and witnesses because all of the facts alleged occurred in Dallas County. Doc. 10, Am. Compl., ¶¶ 20, 21, 48. Sixth, because this Court is already exercising jurisdiction over

Plaintiffs' other claims, judicial economy and efficiency favor the Court exercising jurisdiction. Seventh, exercising jurisdiction here would not require the Court "to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Ironshore*, 624 F. App'x at 164 (internal quotations omitted).

Since each factor weighs against dismissal, this Court finds it proper to exercise its jurisdiction over Plaintiffs' declaratory action. *See id.* at 166 (finding "the district court abused its discretion" by dismissing a declaratory judgment action when "[a]ll seven of the *Trejo* factors weigh[ed] against dismissal"). Therefore, the Court **DENIES** the County's Motion as to Plaintiffs' claim for declaratory judgment.

D.      *The Court Grants Plaintiffs Leave to Amend the Complaint.*

The Court grants leave for Plaintiffs to amend the § 1983 and Texas constitutional claims in their Amended Complaint. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and

emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

While Plaintiffs did not request leave to amend their Complaint, considering these factors, the Court will nevertheless grant Plaintiffs leave to do so. First, leave to amend would not be futile because the Court finds the Plaintiffs could, with more support, state plausible § 1983 and Texas constitutional claims. And though Plaintiffs have previously amended their Complaint, their single amendment does not constitute a repeated failure to cure the deficiencies the Court found here. Accordingly, the Court grants Plaintiffs leave to amend their Complaint.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the County's Motion to Dismiss (Doc. 12). The Motion is **GRANTED** as to Plaintiffs' § 1983 and Texas Constitutional claims, both of which the Court **DISMISSES WITHOUT PREJUDICE**. The Motion is **DENIED** as to Plaintiffs' claim for declaratory judgment. Should Plaintiffs elect to file an amended complaint, they must do so on or before **MONDAY, OCTOBER 28, 2024**.

SO ORDERED.

SIGNED: October 7, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE